# EXHIBIT 1

Exhibit 1
Page 2

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

R. Alexander Pilmer
To Call Writer Directly:
(213) 680-8405
alex.pilmer@kirkland.com

333 South Hope Street
Los Angeles, California  90071

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

June 18, 2015

**Re:**      **Letter Motion to Compel Additional U.S. Central Depositions**

*NCUA v. RBS Securities Inc. et al.*, No. 11-2340 (D. Kan.)
*NCUA v. RBS Securities Inc. et al.*, No. 11-5887 (C.D. Cal.)
*NCUA v. Morgan Stanley & Co. et al.*, No. 13-6705 (S.D.N.Y.)

The Honorable Denise L. Cote
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

The Honorable George H. Wu
United States District Court for the
Central District of California
312 North Spring Street
Los Angeles, California 90012-4701

The Honorable John W. Lungstrum
The Honorable James P. O'Hara
United States District Court for the
District of Kansas
500 State Avenue, Suite 517
Kansas City, Kansas 66101

Beijing    Chicago    Hong Kong    Houston    London    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

Exhibit 1
Page 3

# KIRKLAND & ELLIS LLP

Dear Judges Cote, Wu, Lungstrum, and O'Hara:

We write on behalf of Defendants with pending U.S. Central claims seeking leave to take three additional one-day depositions of U.S. Central witnesses in the Kansas and California actions on top of the five depositions provided for in the Master Discovery Protocol ("MDP"), for a total of eight individual depositions of that credit union.[1]  There is good cause to grant this relief.[2]

To date, Defendants have deposed or are scheduled to depose four key U.S. Central personnel:  Kirk Hatfield and Everett Lanter, the individuals responsible for U.S. Central's credit analysis on the certificates at issue; Connie Loveless, U.S. Central's former Chief Investment Officer during the relevant time period; and Brad Thomas, U.S. Central's former Chief Risk Officer.  The depositions of Mr. Hatfield and Ms. Loveless revealed that more than five depositions are needed to allow Defendants to obtain testimony on defendant-specific topics and certain global issues. Defendants accordingly request that the Courts modify the MDP to permit Defendants to take depositions of Steve Jones, David Filby, Doug Hoelscher, and Sandra Brady in addition to the four U.S. Central depositions already taken or scheduled.

Steve Jones and David Filby.  Three different U.S. Central Portfolio Managers were responsible for purchasing the 53 certificates at issue for U.S. Central: Mr. Jones, Mr. Filby, and Paul Hidaka, who passed away in June 2014.  *See* Ex. A (Sec. Am. Resp. to U.S. Central Interrog. No. 8); *see also* Ex. L (Am. Init. Discl.) at Ex. A.  Mr. Jones and Mr. Filby each placed separate trades for different bonds for which NCUA asserts claims against different Defendants, and thus neither can speak to all of the purchases at issue.  *See, e.g.*, Ex. B (WMLT 2006-ALT1 File at NCUA-USC-0000156167); Ex. C (HVMLT 2006-11 File at NCUA-USC-0000153199; Ex. D (FFML 2006-FF4 File at NCUA-USC-0000152377); Ex. E (NCUA-USC-0000512680); Ex. F (NCUA-USC-0000498455); Ex. G (RASC 2006-KS9 File at NCUA-USC-0000279588).  Because certain Defendants need to depose Mr. Jones, while other Defendants need to depose Mr. Filby, limiting Defendants to a deposition of one *or* the other would unfairly deny certain Defendants the opportunity to depose the portfolio manager responsible for purchasing certain or all of their certificates at issue.

Doug Hoelscher.  During 2007, U.S. Central transferred many of the certificates at issue in these cases to an off-balance sheet entity called Sandlot Funding LLC.  *See, e.g.*, Ex. H at NCUA-USC-0010074402-05; Ex. I (Loveless Dep. Tr. Vol. 2) at 361:16-364:18.  In 2008, U.S. Central also re-securitized several certificates in an offering called Jefferies Resecuritization Trust 2008-R5, Series 2008-R5 ("JMAC").  *See* Ex. J (NCUA-USC-0010559121); *see also* Ex. I at 372:21-376:9. These transactions could have significant implications for NCUA's claimed damages insofar as any amounts U.S. Central received in connection with the disposition of these certificates seven to eight

---

[1]   Because U.S. Central is not at issue in the New York action, this motion relates solely to the actions pending in Kansas and California.

[2]   The Courts contemplated a potential modification to fact deposition limits later on in the discovery period during the initial hearing on the MDP.  *See* Ex. M (4/2/2014 Hr'g Tr.) at 35:8-25.

Exhibit 1
Page 4

# KIRKLAND & ELLIS LLP

years ago could reduce or eliminate its damages.[3]  During her testimony, Ms. Loveless was able to provide very little information about these transactions and identified Doug Hoelscher, an accountant at U.S. Central, as the employee who would be able to provide additional information about them. *See* Ex. I (Loveless Dep. Tr. Vol. 2) at 350:12-351:9; 358:24-359:8; 366:11-367:2; 375:23-376:9; 389:6-15; 390:24-391:6; 398:2-6.  To develop a complete record concerning these two transactions, Defendants seek leave to depose Mr. Hoelscher.

<u>Sandra Brady.</u>  Sandra Brady was Vice President and Chief Audit Officer at U.S. Central. Based on U.S. Central's document production, Ms. Brady performed post-mortem analysis concerning the failure of U.S. Central, including the review of U.S. Central's investment strategies with respect to RMBS during the relevant time period.  Defendants seek leave to depose Ms. Brady to develop a complete record regarding, among other things, the relationship between U.S. Central's RMBS investment strategies, its purchase decisions, and its ultimate failure.

These depositions are particularly important because NCUA has not produced any transcripts of past depositions of U.S. Central employees from which Defendants may obtain this discovery. Defendants, on the other hand, have produced hundreds of deposition transcripts relating to their own witnesses.  For example, RBS alone has produced 110 deposition transcripts of its current and former employees.  To date in these cases, NCUA has taken or noticed the depositions of nine RBS witnesses, each of whom has been deposed between three and nine times before (including by NCUA's counsel here in other matters).  If Defendants are not permitted to take these additional depositions, their ability to develop a full factual record concerning the securities transactions at issue and potential damages will be prejudiced.  In contrast, NCUA faces little incremental burden. Indeed, the eight depositions requested by Defendants are still fewer than the ten depositions envisioned by Federal Rule of Civil Procedure 30(a)(2)(A)(i) for just one case; NCUA, of course, has filed seven cases on behalf of U.S. Central, with different Defendants involved in different cases. Moreover, the eight depositions would be fewer than the ten depositions NCUA is permitted of each Defendant.  *See* ECF No. 197.

Given the dozens of certificates at issue across the Kansas and California actions, the importance of Sandlot Funding and JMAC transactions to the issue of potential damages, the importance of U.S. Central's post-mortem analysis regarding its investment strategies, the prejudice to Defendants if the requested relief is not granted, and the minimal additional burden on NCUA, the Courts respectfully should compel NCUA to make Ms. Brady and Mssrs. Jones, Filby and Hoelscher available for deposition.

---

[3]   The parties have differing views about the nature of the Sandlot and JMAC transactions, and their impact on NCUA's claimed damages, underscoring the need for further discovery.  *See generally* Ex. K (6/2/15 Email from A. Shen to G. Campbell); *c.f. Briggs & Stratton Corp. v. Chongqing Rato Power Co.*, 2013 WL 5963151, at *6 (N.D.N.Y. Nov. 7, 2013) (limiting discovery on damages issues would "deprive the parties of critical information relevant to damages" and potentially "preclude early settlement discussions").

Exhibit 1
Page 5

# KIRKLAND & ELLIS LLP

Very truly yours,

*/s/ R. Alexander Pilmer*

R. Alexander Pilmer

4

Exhibit 1
Page 6

# EXHIBITS A THROUGH K

## RBS HAS CONCURRENTLY-FILED A REQUEST THAT THESE DOCUMENTS BE FILED UNDER SEAL

Exhibit 1
Page 7

# EXHIBIT L

Exhibit 1
Page 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union,<br><br>             Plaintiff,<br><br>v.<br><br>RBS SECURITIES, INC., *et al.*,<br><br>             Defendants. | Case Nos. 11-cv-2340-JWL-JPO |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union and Western Corporate Federal Credit Union,<br><br>             Plaintiff,<br><br>v.<br><br>WACHOVIA CAPITAL MARKETS LLC,<br><br>             Defendant. | Case No. 11-cv-2649-JWL-JPO |

<u>**Plaintiff NCUA's Amended Fed. R. Civ. P. 26(a)(1) Initial Disclosures**</u>

Plaintiff National Credit Union Administration Board ("NCUA"), in its capacity as Liquidating Agent of U.S. Central Federal Credit Union ("USC") and Western Corporate Federal Credit Union ("WesCorp"), makes the following amended initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  The initial disclosures are based on information reasonably available to NCUA at this time.  NCUA expressly reserves the right to supplement or amend these disclosures, and to produce, during discovery or at trial, additional information or documents (i) subsequently discovered; (ii) subsequently determined to be relevant for any purpose; or (iii) subsequently discovered to have been omitted from these disclosures.  NCUA expressly reserves all objections to

Exhibit 1<br>Page 9

the use, for any purpose, of these initial disclosures or of any information or document referenced herein.

## I.      INDIVIDUALS (Fed. R. Civ. P. 26(a)(1)(A)(i))

Most individuals likely to have discoverable information that NCUA may use to support its claims are current or former employees of Defendants or other third parties, and are unknown to NCUA.  Exhibit A and Exhibit B list the former employees of USC and WesCorp that are likely to have discoverable information that NCUA may use to support its claims.  Exhibit C lists the employees of NCUA that are likely to have discoverable information that NCUA may use to support its claims.   Each individual listed in Exhibits A, B and C should be contacted through the undersigned counsel at Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Sumner Square, 1615 M Street, N.W., Suite 400, Washington, DC 20036, and/or Korein Tillery LLC, One U.S. Bank Plaza, 505 North 7th Street, Suite 3600, St. Louis, MO 63101.  The individuals and non-party entities listed in Defendants' Fed. R. Civ. P. 26(a)(1) disclosures are also likely to have discoverable information that NCUA may use to support its claims.

## II.      DOCUMENTS (Fed. R. Civ. P. 26(a)(1)(A)(ii))

Most documents and electronically stored information that NCUA may use to support its claims are in the possession of Defendants or third parties.  The portion that is in the possession and/or control of NCUA is located at NCUA's Asset Management Assistance Center ("AMAC"). That portion consists of documentation of the Credit Unions' decisions to purchase the Certificates and of the Credit Unions' post-purchase monitoring of the Certificates.   NCUA may also use documents produced in this litigation to support its claims.

## III.      DAMAGES (Fed. R. Civ. P. 26(a)(1)(A)(iii))

NCUA seeks the full extent of damages available under Section 11 and Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2), the Kansas Uniform Securities Act, Kan.

Exhibit 1
Page 10

Stat. Ann. § 17-12a509(b)(3), and the California Corporate Securities Law of 1968, Cal. Corp. Code §§ 25401, 25501, including prejudgment interest, costs, and attorneys' fees.  In 2010 and 2011, NCUA disposed of some of the Certificates in a series of transactions known as the NCUA Guaranteed Notes ("NGN") Program.  The NGN offering memoranda are being produced concurrently.  NCUA will provide a complete quantification of its damages with its expert disclosures.

**IV.    INSURANCE AGREEMENTS (Fed. R. Civ. P. 26(a)(1)(A)(iv))**

NCUA has no applicable insurance or indemnity agreements.

Exhibit 1
Page 11

Dated:  November 7, 2014

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Rachel E. Schwartz
Norman E. Siegel (D. Kan. # 70354)
Rachel E. Schwartz (Kan. # 21782)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

George A. Zelcs
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel:  (312) 641-9760
Fax:  (312) 641-9751
gzelcs@koreintillery.com

David C. Frederick
Wan J. Kim
Joseph S. Hall
Mark C. Hansen
Scott K. Attaway
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel:  (202) 327-7900
Fax:  (202) 326-7999
dfrederick@khhte.com
wkim@khhte.com
jhall@khhte.com
mhansen@khhte.com
sattaway@khhte.com

Stephen M. Tillery
Greg G. Gutzler
Michael E. Klenov
Giuseppe S. Giardina
Steven M. Berezney
Tamara M. Spicer
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Tel:  (314) 241-4844
Fax:  (314) 241-3525
stillery@koreintillery.com
ggutzler@koreintillery.com
mklenov@koreintillery.com
ggiardina@koreintillery.com
sberezney@koreintillery.com
tspicer@koreintillery.com

*Attorneys for Plaintiff National Credit Union Administration Board*

4

Exhibit 1
Page 12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2014, a copy of the foregoing was served on all counsel of record via Electronic Mail.

/s/ Giuseppe S. Giardina
Attorney for Plaintiff

5

Exhibit 1
Page 13

## EXHIBIT A

### List of Former U.S. Central Employees

| Individual | Subject of Information |
|---|---|
| David Dickens (former Executive Vice President, Asset/Liability Management) | U.S. Central's investment strategy |
| Connie Loveless (former Chief Investment Officer) | U.S. Central's investment strategy |
| Paul Hidaka (former Sr. Portfolio Manager)[1] | U.S. Central's RMBS purchases |
| Steve Jones (former Portfolio Manager) | U.S. Central's RMBS purchases |
| David Filby (former Portfolio Manager) | U.S. Central's RMBS purchases |
| Kirk Hatfield (former Credit Risk Manager) | U.S. Central's RMBS credit analysis |
| Everett Lanter (former Senior Credit Risk Analyst II) | U.S. Central's RMBS credit analysis |
| Brad Thomas (former Chief Risk Officer) | U.S. Central's credit analysis and portfolio monitoring |

---

[1] Upon information and belief, Mr. Hidaka recently passed away.

6

Exhibit 1
Page 14

## EXHIBIT B

### List of Former WesCorp Employees

| Individual | Subject of Information |
|---|---|
| Robert Burrell (former Executive Vice President; Chief Investment Officer) | WesCorp's investment strategy |
| Timothy Sidley (former Chief Risk Officer; former Vice President, Risk Assessment) | WesCorp's credit and risk analysis |
| Jeff Hamilton (former Vice President, Portfolio Management) | WesCorp's investment strategy and RMBS purchases |
| Barrie French (former Portfolio Manager) | WesCorp's RMBS purchases |
| Kathleen Gensler (former Portfolio Manager) | WesCorp's RMBS purchases |
| William C. Eberhardt, Jr. (former Director, Investment Credit Services) | WesCorp's RMBS credit analysis and portfolio monitoring |
| Ketty Cheng (former Sr. Director, Investment Credit Services) | WesCorp's RMBS credit analysis and portfolio monitoring |
| Peter K.H. Lin (former Sr. Securities Credit Analyst) | WesCorp's RMBS credit analysis and portfolio monitoring |
| Stephen M. Rickert (former Sr. Securities Credit Analyst) | WesCorp's RMBS credit analysis and portfolio monitoring |
| Julia (Jia) Xue (former Sr. Securities Credit Analyst) | WesCorp's RMBS credit analysis and portfolio monitoring |
| Paul Schulten (former Credit Research Associate) | WesCorp's RMBS credit analysis and portfolio monitoring |

## EXHIBIT C

### List of NCUA Employees

| Individual | Subject of Information |
|---|---|
| Owen Cole | NCUA Guaranteed Notes (NGN) Program |
| Larry Fazio | NCUA Guaranteed Notes (NGN) Program |

7

Exhibit 1
Page 15

# EXHIBIT M

Exhibit 1
Page 16

```
                                                              1
         E42gnatc
    1    UNITED STATES DISTRICT COURT
    1    SOUTHERN DISTRICT OF NEW YORK
    2    ------------------------------x
    2
    3    NATIONAL CREDIT UNION
    3    ADMINISTRATION BOARD, as
    4    Liquidating Agent of Southwest
    4    Corporate Federal Credit
    5    Union,
    5
    6              Plaintiff,
    6
    7         v.                          13 CV 6705 (DLC)
    7                                     13 CV 6719 (DLC)
    8    MORGAN STANLEY & CO., INC.       13 CV 6721 (DLC)
    8    and MORGAN STANLEY               13 CV 6726 (DLC)
    9    CAPITAL I, INC.,                 13 CV 6727 (DLC)
    9                                     13 CV 6731 (DLC)
   10              Defendants.            13 CV 6736 (DLC)
   10
   11
   11    And other NCUA cases.
   12    ------------------------------x
   12                                     New York, N.Y.
   13                                     April 2, 2014
   13                                     3:30 p.m.
   14
   14    Before:
   15
   15                   HON. DENISE COTE,
   16                              USDJ (S.D.N.Y.)
   16
   17                 HON. JOHN W. LUNGSTRUM,
   17                              USDJ (D. Kansas)
   18
   18                 HON. JAMES P. O'HARA,
   19                              USMJ (D. Kansas)
   19
   20                 HON. GEORGE H. WU,
   20                              USDJ (C.D. Cal.)
   21
   22
   23
   24
   25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

Exhibit 1
Page 17

34

E42gnatc

 1    monumental.
 2              JUDGE COTE:  Would you discuss that issue with NCUA
 3    and see if you can jointly propose some language that would
 4    address that very important issue.
 5              MR. CLARY:  Certainly, your Honor.
 6              JUDGE COTE:  Thank you.
 7              Does anyone else wish to be heard on any of the
 8    deposition questions that I placed?
 9              MR. MUSOFF:  Scott Musoff from Skadden Arps for UBS.
10              From hearing Mr. Frederick, our view was that it was
11    premature to set limits now, including possibly how many days
12    we might need as a group of defendants if we're coordinating
13    with the NCUA folks until we even see our their documents.  In
14    fact, there are some custodians they haven't disclosed yet.
15              So we find it hard to sit here and talk about how many
16    we have.  I heard Mr. Frederick say I don't know what the
17    number is, is it eight or 12?  We feel we're in the same boat.
18    We haven't gotten sufficient document discovery or haven't even
19    met and fully conferred about custodians yet.
20              JUDGE COTE:  We only have five minutes more in New
21    York.  Mr. Musoff, I'm going to take advantage of you being
22    there to move to that next level of question as to whether or
23    not it's useful to the parties now to discuss limits for
24    depositions, whatever they are, small, medium, large, whatever
25    they are.

Exhibit 1
Page 18

35

E42gnatc

1          Is there an advantage to the parties knowing earlier
2     in this discovery schedule because they can focus their
3     energies more efficiently knowing what the number is, or do you
4     prefer to have it later and assume that you're going to get as
5     many as you would like and look at all of the documents
6     accordingly?
7          Which is your preference?
8          MR. MUSOFF:  I think it's probably somewhere in
9     between.  For example, in FHFA, they didn't even take all 20
10    depositions of UBS, and even less for some defendants; yet we
11    were struggling with the number of 20, both because we had to
12    share them amongst defendants, and I think what we realized
13    clearly now is there were two separate entities other than
14    sharing a regulator.  Here, for us, we have four separate
15    entities and they have to be treated that way.
16         I think having some document discovery and some effort
17    to meet and confer and talk about it ourselves doesn't mean we
18    have to wait until the close of document discovery to then
19    start discussing deposition limits.
20         JUDGE COTE:  In fairness, in FHFA, there was an
21    application made to get more depositions beyond the 20, and
22    that was granted.
23         MR. MUSOFF:  Right.  That's why setting them at the
24    outset could be premature.
25         JUDGE COTE:  Thank you.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

Exhibit 1
Page 19

36

E42gnatc

1               MR. FREDERICK:  Your Honor, David Frederick.
2               We do think it makes sense to set limits.  We had
3       proposed 20 in our submission.  And I appreciate my friend,
4       Mr. Musoff, suggesting on my uncertainty.  I was suggesting a
5       downward ratchet from 20 in light of the fact that deposition
6       transcripts not increasing above that.
7               I would note our initial disclosures had a total of 37
8       people from the four credit unions.  And we were proposing that
9       the defendant groups limit themselves to 20 depositions of
10      those 37 people.  I would note that Morgan Stanley has
11      identified 130 people; UBS, 75; Goldman, 56; Credit Suisse, 75.
12              What I was suggesting is we propose the limit of 20
13      because we think that focuses the mind.  We think having a
14      presumptive limit in place in the beginning disciplines the
15      parties, both sides.  Although we acknowledge that in the FHFA,
16      a motion needed to be made to modify that slightly.
17              JUDGE COTE:  Thank you.
18              MR. PILMER:  My favorite day of the year is the
19      opening day of baseball season.  I feel like I get to stand on
20      the on-deck circle until someone is done with their time
21      at-bat.
22              THE COURT:  Counsel, if you would identify yourself
23      again for the record.
24              MR. PILMER:  Alex Pilmer again on behalf of RBS.
25              I think importantly the concept of limits on the
                     SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

Exhibit 1
Page 20